**Johanna TREVINO, Plaintiff,**

v.

**Daryl GATES, et al., Defendants.**

**CV 92–1981 JSL.**

United States District Court,
C.D. California.

Aug. 7, 1992.

Stephen Yagman, Yagman & Yagman, Venice, Cal., for plaintiff.

Annette Keller, Asst. City Atty., Los Angeles, Cal., for defendants.

## ORDER DENYING MOTION TO DISMISS CERTAIN DEFENDANTS BASED ON LEGISLATIVE IMMUNITY

LETTS, District Judge.

The question presented for decision is whether defendant members of the Los Angeles City Council have absolute immunity from being sued for indemnifying police officers found by a jury to have used excessive force in violation of the Constitutional rights of the victim citizens.

If the defendants prevail, it means that there are no circumstances, no matter how egregious, under which the defendants could be brought to personal account for the consequences of their behavior. At this stage of the proceedings, the court has no reason to doubt that any council member has acted in complete good faith with respect to indemnification decisions, and indeed the court would be shocked if plaintiff were to discover any serious improprieties.

It must be remembered, however, that if the council members are entitled to absolute legislative immunity, the court's beliefs in this regard will not be tested, in this case or any other. The worst behavior which might be imagined, such as that the council members actually agreed to ignore the authorizing statute entirely and to vote to indemnify in every case, or that they made indemnification decisions based on the race of the victims, or even that they routinely accepted bribes in return for indemnification, would not expose the council members to personal liability.

The indemnity decisions in question were made pursuant to a California statute which reads as follows:

[A] public entity ... is authorized to pay that part of a judgment that is for punitive or exemplary damages if the governing body of that public entity, acting in its sole discretion, finds all of the following:

(1) The judgment is based on an act or omission of an employee or former employee acting within the course and scope of his or her employment....

(2) ... [T]he employee ... acted ... in good faith, without actual malice and in the apparent best interests of the public entity.

(3) Payment of the claim or judgment would be in the best interests of the public entity.

Cal.Gov't Code § 825(b) (West Supp.1992).

Plaintiffs allege that the City Council has not followed the dictates of the statute, but instead has followed a pattern and practice of indemnifying the officers in substantially every case without regard to the stated statutory considerations. Plaintiffs allege that, by acting in this manner, the City Council has encouraged and ratified the use of excessive force by the police, and that this encouragement and ratification were proximate causes of plaintiff's injuries in this case.

The merits of this contention, and whether it states a cause of action at all, are not before the court. The defendants seek to avoid having to address these and all other issues which might arise, if the case were to go forward, on the grounds that the council members have absolute legislative immunity with respect to the matters in question.

The Supreme Court has explained the rationale for absolute legislative immunity:

Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

*Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). For excellent reason, the rule of absolute im-

munity of legislators protects them from *being sued* at all. It is not, like qualified immunity, a defense entitling legislators to immunity only for acts taken "in good faith." See discussion *infra.*

Although a good and necessary rule, however, the rule that legislators have absolute immunity for their acts is not without drawbacks. Its consequence is that while cloaked with immunity, a legislator can deliberately and willfully inflict grievous injury on anyone, without any color of law, and he cannot be sued. Naturally, therefore, the mere fact that a person happens to be a legislator does not render him absolutely immune from suit for any of his acts. Legislators still must pay their bills, and comply with the speed laws. They are no more free than anyone else to assault people on the street.

The cloak of absolute legislative immunity covers them, however, when they act in their legislative capacity. Defendants' contention that the acts of which the plaintiff complains in this case were legislative centers upon the fact that they were accomplished by vote. Defendants cite several cases in which legislators were held entitled to legislative immunity with respect to their votes, *e.g., Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1982); *Brown v. Crawford County, Ga.,* 960 F.2d 1002 (11th Cir.1992). In the cases cited, however, the matter *being voted upon* was found to be legislative in character. They do not say that if legislators undertake a non-legislative function, as to which they act by vote, they are entitled to absolute legislative immunity.[1]

The Ninth Circuit has formulated the issue in the following way:

Although a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity. Rather, '[w]hether actions ... are, in law and fact, an exercise of legislative power depends not on their form but upon "whether they contain matter which is properly to be regarded as legislative in its character and effect." ' *INS v. Chadha,* 462 U.S. 919, 952, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983) (discussing Congressional action) (citation omitted). "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Yakus v. United States,* 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944) (citation omitted).

*Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 580 (9th Cir.1984). The Court of Appeals, applying this test, held that a council member's votes to disapprove concerts provided for by a contract were mere "[a]dministration of a municipal contract," and thus not legislative acts entitling him to immunity. *Id.*

The more the particular acts of legislators are directed toward the consideration and adoption of legislation of general application, the more clearly the acts are legislative in character. Conversely, the more the particular act, albeit done by vote of the legislature, is directed solely to private interests, the more likely the act will be construed to be non-legislative in character. *See Hughes v. Tarrant County, Tex.,* 948 F.2d 918 (5th Cir.1991).[2] This distinction appears consistent with the policies behind immunity. When legislators deal with legislation which will affect the public at

---

**1.** Defendants also suggest that they are entitled to "absolute quasi-judicial immunity" based upon *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). *Butz,* however, stands only for the proposition that the judicial functions to which absolute judicial immunity attaches are not limited to proceedings conducted by the judiciary. Such immunity can attach, it holds, to any function which is judicial in nature regardless of which branch of government performs it. The court does not see any of the attributes of a judicial function in the acts of the Council at issue in this case. The statute

does not appear to contemplate that findings to be made thereunder are to be made by any judicial or quasi-judicial hearing or other process, and defendants have not suggested that any such process was involved.

**2.** The court is mindful that the Ninth Circuit has found this issue not to be the beginning and the end of the analysis. *Cinevision,* 745 F.2d at 579. The same case did observe that the distinction "may at times be useful," *id.,* and the court finds it to be so in this case.

large, there is maximum interest in freeing them from the threat of lawsuits brought by interested private parties who may be harmed by legislation passed for the general good. When legislators address matters of very limited application, (so that the persons who sue them are unlikely to be persons whose interests are at odds with those of the public as a whole), it is less defensible to shield the legislators from liability when their acts are in bad faith or otherwise in contravention of clearly established law.

The policy of not permitting the threat of lawsuits to interfere with legislative decision-making is an important one. The implementation of that policy, however, through a rule of law giving complete license for bad faith acts having no relation to legitimate legislative objectives could produce very dubious results. If it were true that the City Council has granted unthinking indemnity to all police officers who have used excessive force on victim citizens, no matter how wilfully the force was applied, it would seem quite likely that this practice has contributed significantly to the problems which were revealed in the Report of the Independent Commission on the Los Angeles Police Department, among other places. As long as those responsible for the use of excessive force are able to pass the economic consequences of their acts to taxpayers, change is likely to remain difficult.

Applying these considerations along with the cases already discussed, the court concludes that the acts of which plaintiff complains in this case are not legislative in character, and do not give rise to absolute legislative immunity.

The court does not address here the question of whether the city council members may be entitled to qualified immunity. It would be premature to consider it, because it cannot be decided on the basis of the pleadings alone. The court has considered, however, the ramifications of its holding that the council members are not entitled to absolute immunity, and its conclusion as to that question is influenced by an understanding of the place which qualified immunity has in the decisional scheme.

The court assumes, without deciding, that the relevant standard for deciding whether the council members are entitled to qualified immunity is that set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow*, the council members would be entitled to qualified immunity for acts in the course of their duties "insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Under this standard, as indicated above, facts could conceivably exist under which the council members would not be entitled to qualified immunity. The standard makes it appear unlikely, however, that the case against these defendants will proceed all the way to trial.

The court has also considered the contention that if there is no absolute immunity, council members theoretically could be sued every time they cast a vote on an indemnity matter. The court regards this as a red herring. The indemnity vote does not take place until after the jury has determined liability on the part of the officers.[3] It is a rare plaintiff who would complain about a vote to indemnify which would have the effect of assuring full and prompt payment. Similarly, it seems, since the statute is permissive in nature, a lawsuit brought by a disappointed officer who was denied indemnity would receive very short shrift from the courts.

It is true, of course, that denying absolute immunity could have the effect of adding council members to the list of individual defendants who are habitually joined by some counsel who specialize in excessive

---

**3.** Plaintiff Trevino is unique in this regard. As the unborn child of a victim of the very act of which Trevino now complains, the liability of the acting officers has already been established. To some extent, Trevino may now be understood to allege that the act of the City Council to indemnify the officers amounted to a ratification of the officers' unconstitutional conduct. The court here does not intend here to comment in any way on the validity of such a theory, or on the application of qualified immunity to this theory.

force cases, but who never actually pay the judgments.[4] Such defendants, however, are routinely dismissed early in these cases, on the basis of qualified immunity. If this continues to be true, the practice of joining council members would probably be short-lived. If, on the other hand, it developed that council members were not entitled to routine dismissal on the basis of qualified immunity, it seems certain that the facts would be such as to make it appropriate that they be held responsible for their acts.

Defendants' motion to dismiss defendant council members on the grounds of absolute legislative immunity is DENIED.

IT IS SO ORDERED.

---

**4.** This list currently includes the mayor, the police commission members, and the police chief.