Paul BLUMBERG, Plaintiff,

v.

Daryl F. GATES, et al., Defendants.

No. CV 00–05607 GAF (AJWx).

United States District Court,
C.D. California.

June 13, 2001.

Stephen Yagman, Kathryn S. Bloomfield, Marion R. Yagman, Joseph Reichmann, Venice Beach, CA, Brian C. Lysaght, Frederick D. Friedman, Mitchell A. Kamin, O'Neill, Lysaght & Sun L.L.P., Santa Monica, CA, for plaintiff.

James K. Hahn, Thomas Hokinson, Cecil W. Marr, Paul N. Paquette, Wendy Shapero, Kim Rodgers Westhoff, Los Angeles, CA, for defendants.

## AMENDED ORDER ON DEFENDANTS' MOTION TO DISMISS

FEESS, District Judge.

## I.

### INTRODUCTION AND BACKGROUND

Plaintiff Paul Blumberg contends his constitutional rights were violated when he was falsely arrested by officers of the Los Angeles Police Department ("LAPD") in 1997. His case is connected to the LAPD's Rampart Division scandal.

Plaintiff has sued 19 current and/or former members of the Los Angeles City Council (the "City Council Defendants"), the City Attorney and 17 current and/or former members of his staff (the "City Attorney Defendants").[1] Plaintiff contends each of these defendants can be held individually liable, under 42 U.S.C. § 1983

---

1. This is only a partial list of the more than 100 defendants named in the complaint.

("section 1983"), based on their role in indemnifying police officers assessed punitive damages by juries in civil rights cases. (*See* Complaint at ¶¶ 30–40). In other words, plaintiff contends that historical decisions to indemnify police officers—not even the officers involved in the cases before the Court—in prior civil rights lawsuits have caused the constitutional violations that plaintiff alleges in his complaint.[2]

Rejecting this extraordinary contention after a thorough review of relevant Ninth Circuit precedent and decisions from other circuits, this Court dismissed these "indemnification" claims this past April.[3] The Court concluded that, at the very least, the Ninth Circuit had avoided ruling on this issue, but appeared to suggest that the "indemnification" theory was too attenuated to support a section 1983 claim. However, at least three judges of the Circuit concluded otherwise in *Navarro v. Block*, 250 F.3d 729 (9th Cir.2001), holding that the issue had been decided in *Trevino v. Gates*, 99 F.3d 911 (9th Cir.1996) ("*Trevino II*") and *Cunningham v. Gates*, 229 F.3d 1271 (9th Cir.2000).[4]

*Navarro* plainly permits plaintiffs to assert section 1983 claims, such as those advanced by plaintiff, against the Los Angeles City Council based on the council members' prior decisions to indemnify police officers against punitive damage awards. A fair reading of *Navarro* also suggests plaintiff may go forward with his claims against the City Attorney Defendants at this time. For these reasons, that portion of the Court's prior order granting the City Council Defendants and City Attorney Defendants' motion to dismiss is superceded by this order and plaintiff's indemnification claims may proceed in accordance with the terms of this order.

## II.

## DISCUSSION

### A. *Plaintiff's Indemnification Claims*

Plaintiff contends the City Council Defendants may be held individually liable for his alleged injuries at the hands of several LAPD officers in 1997, based on the council members' prior decisions to indemnify police officers assessed punitive damages by juries in other civil rights actions. Reduced to its essence, plaintiff's theory connecting these decisions to his injuries, is that (1) in the past council members were called upon, pursuant to California Government Code section 825(b) to determine whether or not to indemnify an officer against whom a punitive damage award had been assessed; (2) the council members subverted the requirements of section 825(b) by making decisions to indemnify police officers in bad faith; (3) the police officers who arrested Blumberg knew of this practice on the part of the City Council; and (4) this knowledge contributed to the officers' decision to falsely arrest plaintiff, making the bad faith indemnification "policy" a "moving force behind the violations of plaintiff's rights...." (Complaint at ¶ 30).

Plaintiff ties the City Attorney Defendants to this theory by alleging they rou-

---

**2.** For simplicity's sake, the Court refers to these allegations as plaintiff's "indemnification claims." Plaintiff also has "supervisorial" claims against the City Council Defendants under section 1983. These claims are not addressed by this motion.

**3.** The Court's views on the issue were fully discussed in *Hernandez v. Gates*, 100 F.Supp.2d 1209 (C.D.Cal.2000).

**4.** In an act praiseworthy for its economy, but not technically correct, plaintiff's counsel brought the *Navarro* decision to the Court's attention by letter, rather than by filing a motion for reconsideration. The Court granted defendants an opportunity to file a brief addressing *Navarro*'s impact and after reviewing that submission, the Court finds this matter suitable for resolution without further proceedings.

tinely recommended that the City Council indemnify all police officer defendants who were assessed punitive damages. (*Id.* at ¶ 32). According to plaintiff, this advice was not independent and was actually rendered only to create the appearance of reasoned deliberation on the part of the City Council. (*Id.* at ¶ 33). In reality, the City Attorney Defendants and the City Council Defendants "agreed and understood . . . to subvert the requirements of Cal.Govt.Code Sec. 825(b) by . . . seeing to it that punitive damages awarded . . . against LAPD officers for civil rights violations would [always] be paid by the City . . . ." (*Id.* at ¶ 31).

## B. *The Road to Navarro: Immunity Against a Questionable Claim*

Plaintiff's indemnification theory can be traced to *Trevino v. Gates,* 798 F.Supp. 621 (C.D.Cal.1992), *aff'd,* 23 F.3d 1480 (9th Cir.1994) ("*Trevino I* "), in which the district court and the Court of Appeal held that members of the City Council were not entitled to absolute immunity for their decisions to indemnify police officers.[5] Both the district court opinion and the Ninth Circuit's decision make clear that "the merits of . . . [plaintiff's] contention and whether it states a cause of action at all are not before the court[,]" *Trevino I,* 798 F.Supp. at 622, because "[t]he council members did not challenge the merits of plaintiff's complaint." *Trevino I,* 23 F.3d at 1481.

Having lost on absolute immunity grounds, the Trevino defendants next sought qualified immunity. *See Trevino II,* 99 F.3d at 916. Upholding the district court's grant of summary judgment on this basis, the court held:

> [W]e conclude that the law is not clearly established that a policy of indemnifying punitive damage awards violates constitutional rights, either now or prior to the robbery. A city council does not violate section 1983 if it indemnifies officers against punitive damage awards on a discretionary, case by case basis, and complies in good faith with the requirements of Cal.Gov.Code § 825(b).

*Trevino II,* 99 F.3d at 918.

The court also affirmed summary judgment for the City finding the plaintiff had failed to establish either a custom or policy of bad faith indemnification or ratification of police misconduct. *Id.* at 920, 921. Based on these conclusions, the court found it unnecessary to decide whether the alleged practice was either a cause in fact or a proximate cause of the constitutional deprivation. *Id.*

*Trevino II* 's decision to uphold summary judgment for the council members, on the basis of qualified immunity, and for the City, on the basis of an absence of evidence, is as significant for what it does not say as for what it does. Although the court reviewed the evidence supporting plaintiff's claim against the City, it expressly reserved the questions of actual and proximate cause. Thus, *Trevino II* can be read either as deciding, albeit *sub rosa,* that the plaintiff had adequately stated a claim or as leaving that question to another day and another panel.[6]

---

5. As this Court has previously observed, the Ninth Circuit's opinion in *San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159 F.3d 470 (9th Cir.1998), casts some doubt on *Trevino I* 's continuing validity.

6. Based on the favorable citation to district court opinions from the Northern District of Illinois, this Court concluded that *Trevino II*

intended to suggest that the indemnification theory did not present a cognizable claim under section 1983. The Trevino II court wrote, "Second, cases from other jurisdictions have held that a punitive damages indemnification policy could not cause a constitutional deprivation. *Ekergren v. City of Chicago,* 538 F.Supp. 770, 772–773 (N.D.Ill. 1982); *Brown v. City of Chicago,* 573 F.Supp.

Hope for clarification soon appeared when the Ninth Circuit confronted the issue again in *Cunningham v. Gates;* however, *Cunningham* adopted the same approach as *Trevino II,* ruling that the council members defendants were entitled to qualified immunity for their pre-*Trevino II* indemnification decisions and that, with respect to indemnification decisions made after *Trevino II,* the plaintiff had failed to introduce any evidence of the council members bad faith. *Cunningham,* 229 F.3d at 1292–93. Thus, neither *Trevino I, Trevino II* or *Cunningham,* ever directly addressed whether indemnification claims, taken on their face, contain sufficient allegations of causation, both actual and proximate, to state a claim under section 1983.

## C. *The Navarro Decision*

The Ninth Circuit most recently confronted that issue in *Navarro v. Block,* 250 F.3d 729 (9th Cir.2001). Unlike *Trevino II* and *Cunningham, Navarro* involved a motion to dismiss wherein, the defendants, members of the Los Angeles County Board of Supervisors, moved to dismiss similar allegations for failure to state a claim. The *Navarro* court concluded that the plaintiff had adequately stated a claim against the supervisors under section 1983 by alleging "bad faith execution of a municipal policy to indemnify police officers from punitive damage awards...." *Navarro,* 250 F.3d 729.

*Navarro* is surprising not so much for its conclusion, as for the assertion that its result is *dictated* by *Trevino II* and *Cunningham.* Reasoning backwards, the court stated that it "is clear after *Trevino II* and *Cunningham* ... [that] local legislators are not entitled to qualified immunity if they implement their state created power to indemnify police officers from punitive damages in bad faith." *Id.* at 733. Since bad faith indemnification is what the plaintiff alleged, the Court held that Navarro had stated a cognizable legal claim. *Id.*[7] By deciding the issue on this basis, the *Navarro* panel, like the *Trevino* and *Cunningham* panels before it, simply assumed that a proper causal nexus between the alleged policy of indemnification and the alleged injury had been pled.

## D. *Navarro's Impact*

■ Several things are clear following *Navarro.* First, under the *Navarro* rule, plaintiff has adequately alleged a cause of action against the City Council Defendants and may proceed to prosecute this claim at this time. While *Navarro* did not directly address plaintiff's claims against the City Attorney Defendants, a fair reading of the opinion suggests these claims may also proceed as the theory is basically the same, with a somewhat more attenuated chain of causation.

■ Second, determination of whether defendants' actions actually or proximately caused plaintiff's injuries must be decided on summary judgment at the earliest, not under Rule 12. *Navarro* offered no discussion of causation at all, noting only that

1375, 1379 (N.D.Ill.1983)." *Trevino II,* 99 F.3d at 917. Neither case is mentioned in *Navarro.*

7. *Navarro*'s statement that only "local legislators who implement their state-created power to indemnify police officers from punitive damage awards in good faith on a discretionary case-by-case basis are entitled to qualified immunity" conflates the qualified immunity analysis with the underlying merits determination. *Navarro,* 250 F.3d at 732. If the City Council acts in good faith, the plaintiff's claim should fall because he or she has not shown any wrongful conduct by the defendants. Further, as this determination cannot be made until all of the relevant evidence is discovered and presented to the Court, the traditional benefits of immunity (not having to face suit) have already been lost.

the plaintiff had alleged that his injuries were proximately caused by the supervisors' actions. *Navarro*, 250 F.3d at 731, n.1. Given the case's procedural posture, the decision cannot fairly be read as holding that there is a sufficient causal nexus between a policy of indemnification and constitutional violations by police officers under all circumstances, but rather, that this issue must be determined on the facts of each case after relevant evidence going to causation has been adduced.

Finally, *Trevino II* draws a line in the sand. Indemnification decisions made before the opinion cannot give rise to personal liability because the law was not sufficiently clear that lawmakers could violate a plaintiff's constitutional rights by voting to indemnify police officer defendants. This temporal cutoff may be relevant to the scope of discovery plaintiff is permitted on this claim.

## IV.

### CONCLUSION

For the reasons stated above, the Court's order of April 23, 2001 is amended in accordance with this order and plaintiff's indemnification claims against the City Council Defendants and the City Attorney Defendants may proceed.

IT IS SO ORDERED.