William A. WILCOX, Plaintiff–Appellee,

v.

CITY OF RENO, Defendant–Appellant.

No. 93–16448.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1994.

Decided Dec. 8, 1994.

Marilyn D. Craig, Deputy City Atty., Reno, NV, for defendant-appellant.

Mark Mausert, Hager, Atcheson & Mausert, Reno, NV, for plaintiff-appellee.

Before: ALARCON and HALL, Circuit Judges, and KING *, District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

William Wilcox instituted a section 1983 action against the City of Reno (City) and three of its police officers after an officer twice punched him in the face in the course of an arrest. The jury found that the City of Reno had a policy that resulted in the use of excessive force and that the policy proximately caused Wilcox's injuries. It awarded

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

him one dollar in damages. The District Court deemed Wilcox the prevailing party and awarded him $66,535 in fees from the City of Reno. The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction to review the award of fees under 28 U.S.C. § 1291. For the reasons that follow, we affirm the award of fees.

## I.

Wilcox spent the morning and afternoon of December 6, 1990 "socializing" at a casino bar in Reno, Nevada. By his own estimation, he consumed at least ten beers, four or five shots of bourbon, and at least two mixed drinks. Late in the afternoon, he assaulted a woman at the bar. The jury heard testimony that Wilcox had broken either a glass or a beer bottle against the woman's face, opening a long gash in her cheek so deep it exposed her jaw bone. The jury also heard testimony that the woman's injury was among the worst the casino guards who took Wilcox into custody had ever seen.

Wilcox struggled with casino security guards, who eventually handcuffed and detained him in a holding cell monitored by a video camera. Two police officers from the Reno Police Department, Anthony Tivis and Dave Robertson, soon arrived on the scene and held Wilcox up against a wall. As the officers exchanged police department handcuffs for the casino's, Wilcox kicked or kneed officer Tivis in the groin. The officers quickly wrestled Wilcox to the floor. When Wilcox was face down on the floor and handcuffed, officer Tivis punched him twice on the side of the face or head. The incident left Wilcox with a gash above his eye and several broken teeth. The videotape from the casino's security camera shows a swath of blood remaining on the floor when Tivis and Robertson, along with a third officer, Sergeant Keith Brown, removed Wilcox from the holding cell.

This videotape became a central piece of evidence at trial. Attorneys both for Wilcox and for the City emphasized its importance in opening and closing statements. Significantly,° this videotape, which shows Wilcox drunk and verbally abusive, provided the jury with its only glimpse of the plaintiff. During the course of the trial, Wilcox was incarcerated in Kentucky. Because the City used Wilcox's conviction to impeach his deposition testimony, the jury was aware that his absence was due to imprisonment upon a conviction as a "persistent felony offender," and for three counts of third degree burglary and two counts of first degree burglary.

Wilcox sued the City and officers Tivis, Robertson, and Brown in July 1991. Wilcox asserted in his complaint that all defendants had violated his right to be free from cruel and unusual punishment, his right to be free from the use of excessive force, and his right to equal protection and due process of law. He further asserted that Tivis and the other officers acted pursuant to established police policy in their use of excessive force.

Wilcox also claimed that the City and Sergeant Brown were negligent in hiring, training, supervising, and retaining officers Tivis and Robertson, that the defendants had committed battery, that the City, Tivis, and Robertson had intentionally inflicted emotional distress, that the City had a policy of harassment and concealment, and that all defendants attempted to "cover-up" the events captured on videotape.

The City initially represented all three individual defendants. After the City determined Tivis's actions to be wanton or malicious under Nevada law, however, the City withdrew its representation of him. The City then disciplined Tivis for his participation in the incident. Tivis left the police force and did not further defend himself in this case.

Also subsequent to the filing of this lawsuit, Reno police chief Richard Kirkland issued a directive prohibiting the use of closed fist strikes to the face.[1] Chief Kirkland testified at trial that he even used the videotape

---

**1.** Richard Kirkland became permanent chief of police in October 1991, three months after the filing of this suit. At trial, he testified as follows:

Q: Have you made a directive that there would be no closed fist strike [sic] to the face

in the wake of problems you have had in the department since you became chief, sir?
A: I certainly have, yes, sir.
Tr. of Jan. 13, 1993, at 201.

capturing the incident involving Wilcox as a training tool to show his officers exactly what type of force the new policy no longer allowed.[2]

Prior to trial, Robertson and Brown were dismissed out of the case, leaving only the City and officer Tivis as defendants. The District Court bifurcated the case and entered a default judgment against Tivis. The court found that Tivis had used excessive force and committed an assault and battery, awarding Wilcox $7500 on the excessive force claim and $2500 on the state law claim. Wilcox did not seek attorney's fees from officer Tivis.

The case against the City was tried to a jury. During trial, the court dismissed the state law claims regarding the existence of a policy of harassment and the existence of a cover up. Wilcox dropped a claim of "negligent punching" he had raised at trial. The jury received questions regarding the remaining claims in the form of special interrogatories. With regard to the federal claims, the court asked the jury to decide whether the City had a policy or custom that resulted in the use of excessive force or inadequate training of its police officers. The jury also received interrogatories regarding the state law claims of negligent hiring, training, and supervising, assault and battery, and intentional infliction of emotional distress.

On all claims but one, the jury found for the City. On the single claim, the jury found that the Reno Police Department had a policy that resulted in the use of excessive force, and that this policy proximately caused Wilcox's injuries.[3] Despite Wilcox's claims of continuing headaches and abiding pain in one ear, the jury awarded Wilcox one dollar in damages.

Wilcox subsequently filed a motion seeking attorney's fees pursuant to 42 U.S.C. § 1988. Wilcox's counsel argued that they were especially deserving of fees because they had taken on a case that was "undesirable in that the plaintiff had been taken into custody relative to an act performed while intoxicated and which was extremely prejudicial to any jury." The City filed an opposition and the District Court heard argument on the matter before entering a judgment in favor of Wilcox's counsel in the amount of $66,535. The City timely filed a Notice of Appeal from this judgment.

## II.

The Civil Rights Attorney's Fees Award Act of 1976 (Act) confers discretion upon district courts to award fees to a prevailing party. We review to determine whether the District Court in this case abused that discretion. *Corder v. Gates,* 947 F.2d 374, 377 (9th Cir.1991) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). A district court abuses its discretion when it awards fees "based on an inaccurate view of the law or a clearly erroneous finding of fact." *Corder,* 947 F.2d at 377.

## III.

The version of the Act in force when the District Court awarded fees in this case provided:

---

**2.** Q: And did you further state [at deposition] that you want to send the message clearly to the Reno police officers that that type of conduct is no longer acceptable?

A: Yes, sir, that's exactly correct.

Q: And that you directed that tape be shown in briefings and training sessions to instruct your officers that it is unacceptable conduct?

A: ...

In this case, I wanted to use this tape as to say this is one of those cases that in my judgment as the commander of the police department that it was not necessary and that I do not want officers striking people in this kind of circumstance with their fist[s] when the person's hands are handcuffed and he's l[y]ing on the floor.

Tr. of Jan. 13, 1993, at 204–05.

**3.** Interrogatory No. 1: With regard to the federal claims, do you find from a preponderance of the evidence that:

A. a policy or custom existed within the Reno Police Department which resulted in the use of excessive force;

Answer: YES

. . . . .

Interrogatory No. 2: If you answered yes to any of the above questions, do you find from a preponderance of the evidence that injury was proximately caused to plaintiff by such policy or custom?

Answer: YES

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b) (Supp. IV 1992). Although we acknowledge that section 1988 is intended to encourage vigorous enforcement of civil rights protections, at the same time we are mindful that Congress did not intend the statutory fee award to provide windfalls for civil rights attorneys. *See* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

The Supreme Court recently addressed the question whether a party that recovers only nominal damages is a "prevailing party" within the meaning of section 1988. In *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Court examined the fee award in a case in which the jury awarded the plaintiff nominal damages upon a finding that he had been deprived of an unspecified "civil right." *Id.* at ——, 113 S.Ct. at 570. The Court reasoned that, in order to qualify as a prevailing party, a civil rights plaintiff "must obtain an enforceable judgment against the defendant from whom fees are sought." *Id.* at ——, 113 S.Ct. at 573. Because a judgment entered upon a verdict for nominal damages *is* actually enforceable, the Court held "that a plaintiff who wins nominal damages is a prevailing party under § 1988." *Id.*

■ Here, Wilcox obtained an enforceable judgment of one dollar against the City and sought fees from the City. Wilcox is therefore a prevailing party, vis-a-vis the City, within the meaning of section 1988. The remaining question is whether the District Court abused its discretion in awarding $66,535 in fees.

4. The district court had originally ordered the action dismissed without any damages awarded to the plaintiffs. The Court of Appeals for the Fifth Circuit reversed and remanded for entry of judgment for nominal damages because the jury

## IV.

The City argues that, even if Wilcox is a prevailing party, *Farrar* precludes the District Court from awarding attorney's fees in this case. We disagree.

### A.

*Farrar* establishes that a district court should give primary consideration to the degree of success achieved when it decides whether to award attorney's fees. The Supreme Court in that case announced that "[a]lthough the 'technical' nature of a nominal damages award ... does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar,* at ——, 113 S.Ct. at 574.

In *Farrar,* the District Court had awarded fees after entering judgment for one dollar upon a jury finding that the defendant had deprived the plaintiff of an unspecified civil right.[4] *Id.* at ——, 113 S.Ct. at 570. Nonetheless, the District Court calculated the fee award by multiplying the hours reasonably expended on the litigation as a whole and a reasonable hourly rate, "without engaging in any measured exercise of discretion." *Id.* at ——, 113 S.Ct. at 575. Because the District Court "awarded ... attorney's fees without 'consider[ing] the relationship between the extent of success and the amount of the fee award,'" *id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 438, 103 S.Ct. 1933, 1942, 76 L.Ed.2d 40 (1983)), the Court reasoned the award was improper.

■ Nothing in *Farrar,* however, suggests that district courts may never award fees to a party who recovers only nominal damages. *Farrar* does not establish a per se rule that an award of fees premised upon an award of nominal damages is always an abuse of discretion. Rather, *Farrar* teaches that district courts, in the exercise of their discretion, should consider the extent of success in calculating a fee award. When the sole purpose of a civil rights claim is the

had found defendants deprived the plaintiffs of a civil right. The district court then entered judgment for one dollar and awarded fees. *Farrar,* —— U.S. at ——, 113 S.Ct. at 570.

recovery of money damages, a failure to obtain a judgment awarding actual damages is a strong indication of a low degree of success, because "the awarding of nominal damages ... highlights the plaintiff's failure to prove actual, compensable injury." *Id.* at ——, 113 S.Ct. at 575 (citing *Carey v. Piphus,* 435 U.S. 247, 254–64, 98 S.Ct. 1042, 1047–53, 55 L.Ed.2d 252 (1978)). Thus, if a lawsuit achieves nothing other than an award of nominal damages, the prevailing party *might* deserve to "receive no attorney's fees at all." *Farrar,* —— U.S. at ——, 113 S.Ct. at 575.

■ *Farrar* therefore teaches that an award of nominal damages is not enough. If a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation succeeded, *in addition* to obtaining a judgment for nominal damage. If the lawsuit achieved other tangible results—such as sparking a change in policy or establishing a finding of fact with potential collateral estoppel effects—such results will, in combination with an enforceable judgment for a nominal sum, support an award of fees.

■ The determination whether to make an award in such circumstances, however, remains within the discretion of the district court. This allocation of decisionmaking authority makes sense. The district court is in the best position to ascribe a reasonable value to the lawyering it has witnessed and the results that lawyering has achieved. *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."); *Corder v. Gates,* 947 F.2d 374, 378 (9th Cir.1991) ("[D]iscretionary judgments of the district courts, which watch civil rights cases unfold before them, must be respected."). Thus, "[i]t is central to the

awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989).

■ Having thus established that the District Court retained some, albeit limited discretion to award fees premised upon an award on nominal damages, we turn next to the question whether the District Court's exercise of judgment in this case constituted an abuse of discretion.

### B.

After the entry of judgment, Wilcox filed a Motion for Award of Costs and Attorney's Fees. The City filed an opposition to the motion. The District Court scheduled a hearing on the motion and heard argument for one and one-half hours. The Court recessed, and, when it reconvened one and one-half hours later, it granted the motion, awarding Wilcox's counsel a sum equal to only sixty percent of the amount requested.[5]

At the hearing, the District Court explained its decision to award fees. First, it found that *Farrar* did not preclude it from awarding fees simply because Wilcox obtained a one dollar verdict. For the reasons discussed above, we think this to be an accurate reading of that opinion. *Cf. Corder,* 947 F.2d at 377 (stating that a fee award premised on an inaccurate view of the law would constitute an abuse of discretion).

■ Second, the District Court distinguished the result Wilcox obtained from the result the plaintiff in *Farrar* obtained:

A distinguishing factor of *Farrar* is that it was not found that the defendant's conduct was the proximate cause of any damages suffered by plaintiff, unlike our

---

5. Wilcox's counsel requested $110,990.53. Counsel requested that the District Court apply a multiplier to boost the award above the simple product of the hours expended and hourly rate because the case was high risk: the plaintiff was undesirable because his arrest followed a brutal

attack committed while severely intoxicated, and because the plaintiff would be incarcerated in a foreign jurisdiction during the trial. The District Court rejected the application of a multiplier, struck a number of hours pursuant to challenges by the City, and awarded only $66,535.00.

case.... I think there is a legitimate distinction to be made in that regard.

In our case, the policy of the Reno police department in regard to excessive force was found by the jury, and the jury further found that the policy was the proximate cause of any damages suffered by the plaintiff.

The thing we must focus on is that finding [of] a policy, which is a pretty important proposition. And [counsel for Wilcox] has argued that it could be used as a matter of collateral estoppel, if there were other cases like it which arose during that period of time, and I think that is true....

If you look at *Farrar*, it really didn't do anything ... beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that their rights had been violated in some unspecified way.

In contrast ... our case goes beyond that. There is much more success in our case....

Exposing an unconstitutional policy of this sort within the city police department does a great deal more than a finding that a plaintiff's rights have been infringed upon in some unspecified way. The police department itself, and the community at large benefit from a finding of this sort....

I think that *Farrar* can be distinguished from [this case] for those reasons, [and] that the degree of success in this case does merit the award of attorney's fees under Title 42 of the United States Code Section 1988.

Tr. of June 14, 1993, at 5–6 (hearing on motion for attorney's fees). These points of distinction state the law correctly. *Cf. Corder*, 947 F.2d at 377. Because *Farrar* did not establish a rule against fee awards for nominal damages, the District Court was not obliged to distinguish this case from *Farrar*. Its doing so, however, emphasizes that the District Court properly followed the primary teaching of that and other cases—that " 'the degree of the plaintiff's *overall* success goes to the reasonableness' of a fee award." *Far-*

*rar*, —— U.S. at ——, 113 S.Ct. at 574 (quoting *Texas Teachers Ass'n v. Garland School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989)) (emphasis added).

Furthermore, the City can point to no "clearly erroneous finding of fact" the District Court relied on in awarding fees. The District Court stated that "[t]he police department itself ... benefit[s] from a finding of this sort." Tr. of June 14, 1993, at 6 (hearing on motion for attorney's fees). The parties, however, dispute whether the police department did in fact benefit from the litigation. Wilcox argued to the District Court that "[a] rational response by the defendant City will entail a permanent change relative to the unconstitutional policy."[6] The City admitted a change of policy had occurred—the police chief issued a directive prohibiting closed fist strikes to the face[7]—but attributes the change in policy to a "change in administrations," Appellant's Br. at 11, rather than a response to the lawsuit.

We cannot say in these circumstances that the District Court's finding that the Reno Police Department benefits from the declaration that its use of force policy violated the Constitution was clearly erroneous. Predictably, Wilcox argued that it did result in an improved policy, while the City argued that it did not. The District Court was free, within the bounds of the clearly erroneous standard, to find that the lawsuit did benefit the police department.

## V.

This lawsuit achieved admirable results. The jury determined a city policy to be unconstitutional, and further determined that the policy caused injury to Wilcox. During the course of the litigation, the city disciplined officer Tivis, whose misconduct may not have come to light but for the initiation of this lawsuit. Also during the course of litigation, the City modified its use of force policy. The litigation likely precipitated both the disciplining of Tivis and the change in policy. The judgment that the prior policy was un-

---

6. Motion for Award of Costs and Attorney's Fees at 7.

7. Opposition to Motion for Award of Costs and Attorney's Fees at 6.

 

constitutional will benefit the City and its residents by preventing the police department from reverting to its old policy or a similar policy some time in the future. In fact, the District Court found that the police department and the community at large benefit from the finding of an unconstitutional policy.[8]

Counsel for Wilcox expended significant time and energy litigating against a resistant City that steadfastly defended its unconstitutional use of force policy. Counsel persevered despite the fact that their client was unsympathetic: The video of the incident—a central piece of evidence at trial—showed Wilcox drunk, verbally abusive, and uncooperative. Moreover, the jury was informed that Wilcox, just prior to his arrest, had broken a glass or a beer bottle on a woman's face, and had also been convicted of several felonies and was incarcerated at the time of the trial. These factors indicate that the "overall success," *Farrar*, —— U.S. at ——, 113 S.Ct. at 574 (*quoting Garland*, 489 U.S. at 792, 109 S.Ct. at 1493–94), counsel obtained in this case goes well beyond the one dollar verdict.

The District Court premised its fee award on neither an incorrect view of the law nor any clearly erroneous finding of fact. Rather, it engaged in a careful evaluation of the degree of success Wilcox obtained, in light of controlling caselaw. We therefore hold that the District Court did not abuse its discretion in awarding $66,535 in fees.

## VI.

We conclude that Wilcox was a prevailing party within the meaning of section 1988. Despite that the jury awarded Wilcox only nominal damages, the District court was free, in its discretion as limited by *Farrar*, to award a reasonable fee. We further con-

clude that the District Court did not abuse this discretion.

AFFIRMED.

I think the better view of our case, however, is that it goes beyond merely a demand for private damages. I don't think that private damages can be said to be the sole or primary purpose of this action.
Tr. of June 14, 1993, at 4 (hearing on motion for attorney's fees).

---

**8.** The District Court also found that these extrinsic benefits were among the purposes of the litigation:
    In *Farrar* ... the recovery of private damages was the purpose of the action. And *Farrar* says, under those circumstances, the court is obligated to give primary consideration to the amount of the damage award.