**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MELINDA BENTON, Individually and
Representative of a Class,
              *Plaintiff-Appellee,*

v.

OREGON STUDENT ASSISTANCE
COMMISSION; OREGON OFFICE OF
DEGREE AUTHORIZATION; ALAN
CONTRERAS, in his Official and
Individual Capacities; JEFF
SVEJCAR, in his official capacity as
executive director of Oregon
Student Assistance Commission,
              *Defendants-Appellants.*

No. 03-35975

D.C. No.
CV-00-06272-HO

MELINDA BENTON, Individually and
Representative of a Class,
              *Plaintiff-Appellant,*

v.

OREGON STUDENT ASSISTANCE
COMMISSION; OREGON OFFICE OF
DEGREE AUTHORIZATION; ALAN
CONTRERAS, in his Official and
Individual Capacities; JEFF
SVEJCAR, in his official capacity as
executive director of Oregon
Student Assistance Commission,
              *Defendants-Appellees.*

No. 03-36002

D.C. No.
CV-00-06272-MRH

OPINION

11573

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, Chief District Judge, Presiding

Argued and Submitted
May 4, 2005—Portland, Oregon

Filed August 25, 2005

Before: Alfred T. Goodwin and Richard R. Clifton,
Circuit Judges, and John S. Rhoades, Sr.,* District Judge.

Opinion by Judge Rhoades

---

*The Honorable John S. Rhoades, Sr., Senior United States District
Judge for the Southern District of California, sitting by designation.

## COUNSEL

Stephen K. Bushong (argued) and Daniel J. Casey (briefed) Oregon Department of Justice, Salem, Oregon, for defendants-appellants-cross-appellees.

Wendell R. Bird (argued) and Jonathan T. McCants (briefed), Bird & Loechl, LLC, Atlanta, Georgia, for the plaintiff-appellee-cross-appellant.

**OPINION**

RHOADES, District Judge:

## I.  Introduction

The parties have filed cross-appeals of the district court's order awarding $371,362 in attorney's fees and $70,828.84 in costs in a case where the sole relief obtained was a judgment in the amount of one dollar. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## II.  Background

Melinda Benton ("plaintiff") is a professor at a community college in Oregon. She holds a degree from Bob Jones University, an unaccredited institution that emphasizes conservative values. At the time she brought this action, Oregon law provided in relevant part:

> No person who has been warned by the Oregon Student Assistance Commission, through the Office of Degree Authorization, to cease and desist shall claim or represent that the person possesses any academic degree unless the degree has been awarded to or conferred upon the person by a school that:
>
> (a) Has accreditation recognized by the United States Department of Education or the foreign equivalent of such accreditation . . . .

Or. Rev. Stat. § 348.609.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. Plaintiff brought this § 1983 action as a class action seeking declaratory and injunctive relief. Plaintiff alleged seven claims for violation of the federal and state constitutional rights to free speech, free exercise of religion, due process and

equal protection. These claims were predicated upon allegations that the Oregon Office of Degree Authorization had decreed that plaintiff should be fired from her position at the college because her degree was "illegal" or face criminal sanctions and then later decreed that plaintiff need not be fired but must give a disclaimer regarding her degrees.

Plaintiff initially named four defendants: the Oregon Department of Education, the Oregon Student Assistance Commission, the Oregon Office of Degree Authorization and Alan Contreras, the administrator of the Oregon Office of Degree Authorization, in his official and individual capacities. Plaintiff later amended her complaint to drop the institutional defendants and add two more individuals: Stan Bunn, in his official capacity as Superintendent of Public Instruction and Head of the Oregon Department of Education, and Jeff Svejcar, Executive Director of the Oregon Student Assistance Commission.

The district court denied class certification and dismissed defendant Bunn from the case. Subsequently, the Oregon Legislature amended Or. Rev. Stat. § 348.609 to provide an additional exception to the "cease and desist" requirement where the school is "located in the United States and has been found by the [Oregon Student Assistance Commission through the Office of Degree Authorization] to meet standards of academic quality comparable to those of an institution located in the United States that has accreditation, recognized by the United States Department of Education, to offer degrees of the type and level claimed by the person." Or. Rev. Stat. § 348.609(1)(d). The district court then dismissed plaintiff's claims for declaratory and injunctive relief as moot in light of the amendment to Or. Rev. Stat. § 348.609.

Plaintiff then sought leave to amend her complaint to add a claim for compensatory damages against defendants Svejcar and Contreras in their individual capacities in an unspecified amount. The district court allowed the amendment.

Finally, at some point in the litigation, plaintiff unsuccessfully attempted to amend the complaint to add claims against several past and present members of the Oregon Student Assistance Commission.

At the pretrial conference, plaintiff sought reconsideration of the district court's previous rulings disposing of much of her case. The district court entertained additional briefing and took evidence at trial but ultimately affirmed its prior summary judgment rulings. After a bench trial, the district court found that defendant Contreras had violated plaintiff's constitutional rights. Specifically, the district court concluded that defendant "Contreras' application of the regulations to plaintiff's degrees resulted not from an intent to achieve the goals of the regulations, but because of bias toward the institution from which they were received." That finding is not challenged on appeal. The district court awarded plaintiff nominal damages in the amount of one dollar. Although plaintiff contends that she received a declaratory judgment that her rights were violated, a review of the judgment reveals that the judgment is a damages judgment only.

Plaintiff subsequently sought attorney's fees in the amount of $857,278 and costs in the amount of $104,213.05. The trial court awarded plaintiff $371,362 in attorney's fees and $70,828.84 in costs.

Both plaintiff and defendants[1] have filed timely notices of appeal of the district court's award.

---

[1]Because cross-appeals were filed and for ease of reference, we will use the terms "plaintiff" and "defendants" rather than appellee/cross-appellant and appellants/cross-appellees. Although the judgment is only against defendant Contreras, reference is made to "defendants" throughout the briefs and in the district court's fee order. Thus, the term "defendants" will be used in this opinion.

### III. Analysis

#### A. Standard of review

We review an attorney's fee award pursuant to 42 U.S.C. § 1988 under an abuse of discretion standard. *See Wilcox v. City of Reno*, 42 F.3d 550, 553 (9th Cir. 1994); *Corder v. Brown*, 25 F.3d 833, 836 (9th Cir. 1994). "A district court abuses its discretion when it awards fees 'based on an inaccurate view of the law or a clearly erroneous finding of fact.' " *Wilcox*, 42 F.3d at 553 (quoting *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir. 1991)). "Any elements of legal analysis which figure in the district court's decision are, however, subject to de novo review." *Corder*, 25 F.3d at 836. "[I]t is vital that the court provide 'some indication or explanation of how [it] arrived at the amount of fees awarded.' " *Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005) (second alteration in original) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir.1987)). "Moreover, when confronted with an objection on the basis of the limited nature of relief obtained by the plaintiff, 'the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.' " *Cummings*, 402 F.3d at 947 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

#### B. Plaintiff's Entitlement to Fees

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). A § 1983 plaintiff who receives a nominal damage award is a prevailing party for purposes of § 1988. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992). That does not, however, mean that such a plaintiff is necessarily entitled to an award of fees. *See Farrar*, 506 U.S. at 114 (explaining that although the " 'technical' nature of a

nominal damages award . . . does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988").

In *Hensley*, the Supreme Court explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. After calculating this "lodestar" amount, the district court should then determine whether "other considerations" warrant increasing or decreasing the lodestar amount. *Id.* As explained in *Hensley*, these "other considerations" include the following twelve factors:

> (1)   the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at n. 3.[2]

**[1]** Although this is the analysis generally applied by district courts in determining fee awards, as we noted in *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996), *amended by* 108 F.3d 981 (9th Cir. 1997), the Supreme Court in *Farrar* "held that 'nominal damages' cases in which the relief is *de*

---

[2]As the Court noted, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

*minimis* are exempted from the general requirements that govern the calculation of attorney's fees . . . ." *Id.* at 362. This includes "the requirement that a lodestar first be calculated," *id.*, as well as the requirement that the district court "recit[e] the 12 factors bearing on reasonableness," *Farrar*, 506 U.S. at 115. After *Farrar*, the district court's first consideration must be whether the nominal damages plaintiff is entitled to any fees at all.

**[2]** In *Farrar*, the plaintiffs filed a lawsuit for $17 million dollars against six defendants. After ten years of litigation, they obtained a nominal damages judgment of one dollar against one defendant. The district court nonetheless awarded the plaintiffs $280,000 in attorney's fees. As the Supreme Court explained, " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436). "In a civil rights suit for damages . . . the awarding of nominal damages [ ] highlights the plaintiff's failure to prove actual, compensable injury." *Id.* at 115. In light of the nominal damages award, the Supreme Court concluded that the *Farrar* litigation "accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id.* at 114 (alteration in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). Affirming the court of appeals' decision reversing the district court's award of fees, the Supreme Court explained that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, *the only reasonable fee is usually no fee at all*." *Id.* at 115 (emphasis added) (internal citation omitted).

**[3]** As we have noted, "*Farrar* therefore teaches that an award of nominal damages is not enough" to justify an award of attorney's fees. *Wilcox*, 42 F.3d at 555. "If a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation suc-

ceeded, *in addition* to obtaining a judgment for nominal damage." *Id.* For example, "[i]f the lawsuit achieved other tangible results—such as sparking a change in policy or establishing a finding of fact with potential collateral estoppel effects—such results will, in combination with an enforceable judgment for a nominal sum, support an award of fees." *Id.* Other factors recognized by Justice O'Connor as supporting an award of fees when the plaintiff receives only nominal damages include "the significance of the legal issue on which the plaintiff claims to have prevailed" and whether the success "accomplished some public goal . . . ." *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring). We have approved consideration of these factors. *See Cummings*, 402 F.3d at 947.

We now consider whether the district court properly concluded that plaintiff here obtained "other tangible results" that would warrant the award of attorney's fees and costs.

## 1.   Benefit to the Public At Large

The district court offered two reasons for its decision to award fees. First, it concluded that the public at large would benefit from plaintiff's success on the merits. The district court stated:

> *The court declines to credit the legislative and administrative changes that precede the judgment in this case for purposes of determining an appropriate fee award.* However, the court notes the significant salutary effect achieved by this litigation in that future action by defendants, with respect to similarly situated degree recipients, will be guided by the constitutional parameters delineated by plaintiff's efforts. In this respect, the success of plaintiff in obtaining a declaration that Contreras' conduct in singling out plaintiff's degree for regulation because of bias toward the viewpoints of the institution from which they were received not only serves to vindi-

cate the harm to plaintiff, but to protect the public at large.

It is true that legislative and administrative changes significantly advanced plaintiff's cause. Nonetheless, in light of the discretion still exercised by Contreras and the Office of Degree Authorization with respect to serious minded, but unaccredited institutions, plaintiff's victory at trial serves a *significant purpose* . . . .

(emphasis added).

Defendants contend that, in awarding fees, the district court should not have considered the public benefit derived from the judgment because of the Supreme Court's ruling in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). However, *Buckhannon,* which considered whether a party who has failed to secure a judgment is a prevailing party, in no way undermines Justice O'Connor's *Farrar* concurrence or our decision in *Wilcox*, which addressed distinctly different issues.

In *Buckhannon*, the issue was whether the term "prevailing party" as used in a fee statute[3] "includes a party *that has failed to secure a judgment on the merits* or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 600 (emphasis added). The theory that a "prevailing party" is one whose lawsuit does nothing more than bring about a voluntary change in the defendant's conduct was known as the "catalyst theory." As the Supreme

---

[3]While *Buckhannon* did not deal with § 1988 directly, we have applied its holding to 42 U.S.C. § 1988. *See Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002); *Bennett v. Yoshina*, 259 F.3d 1097, 1101 (9th Cir. 2001).

Court explained in *Buckhannon*, a " 'material alteration of the legal relationship of the parties' " is "necessary to permit an award of attorney's fees." *Id.* at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792-93 (1989)). While "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees," *id.* (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-93), the Court explained that the "catalyst theory" "allows an award where there is no judicially sanctioned change in the legal relationship of the parties," *id.* at 605. Thus, the Supreme Court determined that a plaintiff who does not secure a judgment on the merits "but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" is not a "prevailing party" for purposes of awarding attorney's fees. *Id.* at 600; *see also id.* at 605.

*Buckhannon* did not address the issue of the factors to be applied in determining the reasonableness of an attorney's fee award to a prevailing party. Moreover, nothing in *Buckhannon* suggests that, in assessing the success of a nominal damages plaintiff for purposes of determining the reasonableness of a fee award, a district court cannot consider the factors set forth in Justice O'Connor's *Farrar* concurrence and our decision in *Wilcox*.

Furthermore, although an inquiry into whether a plaintiff who is awarded only nominal damages has accomplished some public purpose or achieved some public goal so that an award of fees would be reasonable may on its face appear very similar to the inquiry under the catalyst theory, they are two separate inquiries with two separate purposes. The purpose of the catalyst theory was to confer upon a plaintiff "prevailing party" status in cases where the plaintiff failed to obtain a judgment. This theory of conveying "prevailing party" status was rejected because to be entitled to fees there must be a change in the legal relationship of the parties. *See*

*id.* at 604. A court engages in the analysis set forth in *Wilcox* and Justice O'Connor's *Farrar* concurrence only where the plaintiff *is* a prevailing party because there *has been* a change in the legal relationship of the parties due to the procurement of a judgment. Then, the court only engages in that analysis for the limited purpose of determining a reasonable fee award.

Finally, as we recently reaffirmed, in determining the reasonableness of fees a district court should consider, *inter alia*, "whether the plaintiff's success 'also accomplished some public goal . . . .' " *Cummings*, 402 F.3d at 947 (quoting *Farrar*, 506 U.S. at 121-22) (O'Connor, J., concurring)). Thus, defendants' contention that this is not an appropriate factor to consider is simply unavailing.

**[4]** The foregoing notwithstanding, we conclude that the district court erred in awarding fees based on a finding that plaintiff's lawsuit ultimately serves to benefit the public at large. The district court's reasoning for awarding fees can be boiled down to the conclusion that because it found that defendant Contreras violated plaintiff's constitutional rights, defendant Contreras will necessarily think twice before violating the rights of others in the future. However, *well prior* to the district court's finding of a constitutional violation and award of nominal damages, defendant Contreras exercised his discretion under the revised version of Or. Rev. Stat. § 348.609 in plaintiff's favor by recognizing her degree as being from an institution that met the standards of academic quality comparable to an accredited institution. Because defendant Contreras' wrongful conduct occurred under the previous statute and because defendant Contreras voluntarily exercised his discretion under the revised statute consistent with the requirements of the Constitution, we find that the record in this case does not support the district court's conclusion that its finding of a constitutional violation under the former version of the statute will in any way guide defendant Contreras' future conduct. Thus, this factor identified by the

district court does not justify the imposition of fees in this case.

### 2.  Benefit to Plaintiff Personally

**[5]** As a second basis for awarding fees, the district court explained:

> Furthermore, even though plaintiff no longer faced restriction on the use of her degrees in Oregon even absent the judgment, her career will always be marked by this occurrence. Obtaining a declaration that her rights were violated serves an important purpose for plaintiff. She now has a judgment to point to in support of the trustworthiness of her education and her credentials.

The district court's language suggests that plaintiff obtained a declaratory judgment; however, she did not. It is undisputed that the district court dismissed plaintiff's claim for declaratory judgment as moot in light of the change in the statute, and nothing in the language of the judgment itself suggests that plaintiff was awarded declaratory relief. Moreover, although plaintiff moved in court "to amend the judgment in order to add the declaratory judgment language from Page Seven of the opinion," a review of the docket reveals that the district court did not amend the judgment, and its refusal to do so is not before us on appeal. The "declaration" to which the district court refers is the district court's conclusion in its Findings of Fact and Conclusions of Law that plaintiff had proven that her constitutional rights had been violated. That conclusion did no more than support the imposition of the nominal damages award.

**[6]** As noted, to justify an award of attorney's fees in this case, the district court must identify "some way in which the litigation succeeded, *in addition* to obtaining a judgment for nominal damage." *Wilcox*, 42 F.3d at 555. In other words, the

lawsuit must have "achieved other tangible results" besides the nominal damages judgment. *Id.* Here, a finding that plaintiff's rights were violated was a prerequisite to the award of nominal damages; in fact, a finding of a constitutional violation will always be present in a civil rights case where nominal damages have been awarded. *See Farrar*, 506 U.S. at 120 (O'Connor, J., concurring) ("*Every* nominal damage award has as its basis a finding of liability, but obviously many such victories are Pyrrhic ones.") (quoting *Lawrence v. Hinton*, 937 F.2d 603 (4th Cir. 1991). Moreover, every plaintiff who receives a nominal damages judgment will necessary have a "judgment to point to" that shows that the plaintiff was in the right and the defendant in the wrong. Thus, the finding that plaintiff's rights were violated and the accompanying judgment cannot be the "something more" required for an award of attorney's fees and costs here.

**[7]** Finally, the judgment is not, as the district court found, evidence that plaintiff can point to "in support of the trustworthiness of her education and her credentials." Rather, the judgment is merely evidence that the former version of O.R.S. § 348.609 was applied to plaintiff in a biased manner. The evidence that plaintiff can point to regarding the legitimacy of her credentials is the finding by defendant Contreras and the Office of Degree Authorization made pursuant to the revised version of the statute that Bob Jones University meets the standards of academic quality comparable to an accredited institution. However, given that this finding was made well prior to the finding of liability and entry of judgment in this case, this determination regarding the legitimacy of plaintiff's credentials cannot be considered a "tangible result" of this litigation that would support an attorney's fee award in this case.

## IV.   Conclusion

The district court's order awarding attorney's fees and costs is REVERSED.