**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2403**

PROJECT VOTE/VOTING FOR AMERICA, INCORPORATED; JONATHAN
PEZOLD; SIERRA LETO,

Plaintiffs - Appellants,

v.

LISA L. DICKERSON, individually; GLENN M. LITSINGER; OFFICER
MORTON (Badge No. 050); RALIGN T. WELLS, in his official
capacity as Maryland Transit Administration Administrator
and Chief Executive Officer,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Richard D. Bennett, District Judge.
(1:07-cv-00092-RDB)

Submitted: August 19, 2011        Decided: August 29, 2011

Before MOTZ and GREGORY, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Reversed and remanded by unpublished per curiam opinion.

Richard A. Simpson, Kimberly A. Ashmore, Katrina A. Skowron,
WILEY REIN, LLP, Washington, D.C.; Andrew D. Freeman, BROWN,
GOLDSTEIN & LEVY, LLP, Baltimore, Maryland; Deborah A. Jeon,
ACLU FOUNDATION OF MARYLAND, Baltimore, Maryland, for
Appellants.  Douglas F. Gansler, Attorney General of Maryland,
Steven M. Sullivan, Assistant Attorney General,
Matthew J. Fader, Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiffs Project Vote/Voting for America, Inc., Jonathan Pezold and Sierra Leto appeal from a district court order denying an attorney's fees award in their 18 U.S.C. § 1983 action against Defendant officials for the Maryland Transit Administration ("MTA"). The district court granted summary judgment in favor of Plaintiffs, awarding them nominal damages of one dollar. Nonetheless, because Plaintiffs received no equitable relief, the court rejected their later motion for attorney's fees. On appeal, Plaintiffs argue that because their lawsuit successfully vindicated important First Amendment rights and they received substantially all of their requested relief, they were entitled to attorney's fees. We agree, and therefore reverse and remand the matter to the district court.

I.

This appeal arises out of a civil rights lawsuit brought by Plaintiffs against the MTA on January 11, 2007. Plaintiffs alleged that an MTA regulation, which had prevented Plaintiffs from registering voters at MTA bus and train stations, violated the First Amendment. On March 27, 2007, the parties filed a joint motion to place the case on the inactive docket pending settlement negotiations. As a part of the settlement negotiations, the MTA agreed to suspend enforcement of the

2

challenged regulation and to work with Plaintiffs towards developing new, replacement regulations. J.A. 29-30. Based on these representations, the district court closed the case.

Later, dissatisfied with the newly drafted MTA regulations, Plaintiffs moved to reopen the case on April 3, 2008. The district court granted Plaintiffs' motion, and the parties submitted opposing motions for summary judgment.

On August 28, 2008, the district court granted summary judgment in favor of Plaintiffs. The court ruled that the regulations were unconstitutional and awarded Plaintiffs nominal damages of one dollar, the exact amount requested by Plaintiffs in the complaint. However, the court found that neither a declaratory judgment nor an injunction was necessary "given the binding judicial undertaking by the defendants that the regulations will not be enforced." J.A. 107.

After the parties failed to agree on the payment of attorney's fees, Plaintiffs moved for fees pursuant to 18 U.S.C. § 1988. Defendants opposed that motion. The district court sided with the MTA, ruling that while Plaintiffs were in fact the prevailing party, they were not entitled to attorney's fees. The court, relying on Farrar v. Hobby, 506 U.S. 103 (1992) and Mercer v. Duke Univ., 401 F.3d 199 (4th Cir. 2005), held that, because Plaintiffs received only nominal damages, "the only

3

reasonable fee is . . . no fee at all." Farrar, 506 U.S. at 115. We disagree with the reasoning of the district court.

## II.

Section 1988 provides that, in its discretion, a court may allow the prevailing party in a civil rights lawsuit to recover reasonable attorney's fees. 42 U.S.C. § 1988(b). Generally, "[a] district court's decision to grant or deny attorney's fee[s] under section 1988 is reviewed for abuse of discretion." Mercer, 401 F.3d at 203. A district court abuses its discretion when it makes an "error of law," Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998), or when it "rel[ies] on erroneous factual or legal premises," Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 221 (4th Cir. 2005) (internal quotation marks omitted).

Plaintiffs were undoubtedly the prevailing party below. See Farrar, 506 U.S. at 112 ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988."). After determining that Plaintiffs are the prevailing party, courts must then look to the "the degree of the plaintiff's overall success" in determining the reasonableness of a fee award. Id. at 114 (quoting Hensley v. Eckerhart, 461 U.S. 424 (1983)). "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary

4

relief, the only reasonable fee is usually no fee at all." Id. at 115. However, in a concurrence, Justice O'Connor set out a three-factor test to "help separate the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees," which this Court later adopted in Mercer, 401 F.3d at 204 (citing Farrar, 506 U.S. at 120-21 (O'Connor, J., concurring)). The Farrar-Mercer test instructs us to consider: (1) the degree of the plaintiff's overall success, (2) the significance of the legal issue on which the plaintiff prevailed, and (3) the public purpose served by the litigation. Farrar, 506 U.S. at 122 (O'Connor, J., concurring); Mercer, 401 F.3d at 204.

First, when evaluating a plaintiff's overall success, we must compare the form and extent of the relief sought to the relief the plaintiff actually obtained. Mercer, 401 F.3d at 204. This factor is particularly important where the plaintiff seeks a large monetary award, but receives only nominal damages -- as was the case in both Farrar and Mercer. See Farrar, 506 U.S. at 114 (explaining that the "district court . . . is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought" (internal quotation marks omitted)). Likewise, "[i]f a case sought injunctive relief, the relevant comparison, of course, would be the scope

5

of the injunctive relief sought to the relief actually granted." Mercer, 401 F.3d at 205.

Here, Plaintiffs sought an injunction, declaratory judgment, and nominal damages. Plaintiffs recovered nominal damages, but were denied equitable relief. Plaintiffs assert that they obtained all the relief they sought from the outset because the MTA changed its regulations in accordance with a "binding judicial undertaking." The MTA argues that its decision to change its regulations was entirely voluntary.

The district court ruled in favor of the MTA. Specifically, the court relied on the Supreme Court's rejection of the "catalyst theory" for determining whether a plaintiff is a prevailing party for § 1988 purposes. See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Services, 532 U.S. 598, 610 (2001). Under the catalyst theory, several circuits had allowed plaintiffs to recover attorney's fees if they could demonstrate that their lawsuit was a "catalyst" for a defendant's change in conduct -- regardless of whether or not the plaintiff ever succeeded on the merits. Id. at 602. The Supreme Court "ruled that the 'catalyst theory' is not a permissible basis for the award of attorney's fees." Id. at 609-10. The district court found that, in light of Buckhannon and Plaintiffs' failure to get an injunction, the first Farrar-Mercer factor weighed against Plaintiffs.

6

However, the district court's reliance on <u>Buckhannon</u> was misplaced. First, <u>Buckhannon</u> resolved only the issue of whether the catalyst theory was an appropriate means of determining if the plaintiff was a prevailing party. 532 U.S. at 600 ("The question presented here is whether th[e] term ['prevailing party'] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not."). Since no one disputes that Plaintiffs were the prevailing party, the district court erred in relying on <u>Buckhannon</u>. <u>See</u> <u>Benton v. Oregon Student Assistance Commission</u>, 421 F.3d 901, 907 (9th Cir. 2005) ("<u>Buckhannon</u> did not address the issue of the factors to be applied in determining the reasonableness of an attorney's fee award to a prevailing party."). We are aware that the Supreme Court rejected the catalyst theory in part because it did not wish district courts to undertake cumbersome, "highly factbound inquir[ies]" into the "defendant's subjective motivations, in changing its conduct," <u>Buckhannon</u>, 532 U.S. at 609; but Justice O'Connor's concurrence in <u>Farrar</u> and our own <u>Mercer</u> opinion plainly invite district courts to engage in a more robust inquiry to decide whether a prevailing party that wins only nominal damages is entitled to any attorney's fees. <u>See</u>

7

*Farrar*, 506 U.S. at 574 ("Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award[.]").

Further, whether or not *Buckhannon* is applicable here, the district court erred when it ignored the actual basis for its own decision to deny equitable relief at summary judgment. That decision rested wholly on the reality that an injunction was unnecessary only because the MTA had already agreed to a "binding judicial undertaking . . . that the regulations will not be enforced." J.A. 107. That "binding judicial undertaking" was the joint motion, endorsed by the court, which stated, "As a part of the settlement negotiations, the [MTA] has agreed that it will take appropriate action to repeal its current regulations." J.A. 29-31. It is clear from the language of the joint motion and the court order granting summary judgment that the parties had entered into a preliminary settlement. A plaintiff can be considered a prevailing party "by virtue of having obtained an enforceable . . . settlement giving some of the legal relief sought in a § 1983 action." *S-1 and S-2 By and Through P-1 and P-2 v. State Board of Education of North Carolina*, 21 F.3d 49, 51 (4th Cir. 1994) (en banc) (emphasis added); *see also Buckhannon*, 532 U.S. at 604 ("[W]e have held that settlement agreements enforced through a consent

8

decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant it nonetheless is a court-ordered change in the legal relationship between the plaintiff and the defendant." (citations and internal alternations and quotations omitted)). That the settlement was only the beginning of the parties' development of a more thorough final agreement is of no matter. See Hanrahan v. Hampton, 446 U.S. 754, 758 (1980) ("Congress intended to permit the interim award of counsel fees . . . when a party has prevailed on the merits of at least some of his claims."). The district court's decision not to award injunctive relief was based on the fact that the parties had already reached an agreement as to that aspect of the relief. That decision did not turn on the court's judgment as to the merits of the case. Cf. Farrar, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." (emphasis added)).

Thus, the district court should have "credited" Plaintiffs for bringing the MTA into a settlement, a "binding judicial undertaking," which afforded Plaintiffs most of the equitable relief sought in the complaint. The first factor therefore weighs in favor of Plaintiffs.

We also find that the district court erred in its application of the second Farrar-Mercer factor. The court incorrectly held that, in order to recover fees, the issue presented in the case must be "groundbreaking" or "novel." J.A. 180-81. A claim need not be novel; instead, "[t]his factor is concerned with the general legal importance of the issue on which the plaintiff prevailed." Mercer, 401 F.3d at 206 (emphasis added). With this in mind, it is well-established that our First Amendment right to speak freely in public forums is a significant legal issue. See Goulart v. Meadows, 345 F.3d 239, 248 (4th Cir. 2003) ("[T]he traditional public forum, is a place that 'by long tradition or by government fiat ha[s] been devoted to assembly and debate.'" (quoting Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). Additionally, Plaintiffs sought to open these public forums as a means of promoting the right to vote, and we have consistently held that voter registration restrictions receive strict scrutiny because such restrictions affect a fundamental right. See Greidinger v. Davis, 988 F.2d 1344, 1355 (4th Cir. 1993). The second factor therefore also weighs in favor of awarding attorney's fees.

Finally, this litigation served a clear public purpose. Unlike the plaintiff in Farrar, Plaintiffs never sought any extravagant or personal financial benefit. Instead, Plaintiffs

10

wished only to vindicate our collective First Amendment rights. See Shaw v. Hunt, 154 F.3d 161, 167 (4th Cir. 1998) ("[R]ecovery under § 1988 is meant to reward those who have undertaken successfully to fulfill the role of a private attorney general."). While the settlement and receipt of nominal damages did little for Plaintiffs personally, their victory undoubtedly signaled to the MTA the importance of ensuring that its regulations do not intrude upon our most basic constitutional and democratic rights. See Lippoldt v. Cole, 468 F.3d 1204, 1224 (10th Cir. 2006) (holding that a fee award was justified because the ruling against the defendants would encourage the defendants to comply with the First Amendment going forward).

The Supreme Court's decision not to grant fees in Farrar was born of its reluctance to reward attorneys for bringing less than meritorious claims that seek, but fail to obtain, large monetary judgments or fail to promote a larger public good. See Farrar, 506 U.S. at 116 (O'Connor, J., concurring) (noting that the plaintiff filed a lawsuit demanding 17 million dollars, but "[a]fter 10 years of litigation and two trips to the Court of Appeals, he got one dollar," and that such a case is "simply not the type of victory that merits an award of attorney's fees."). Here, Plaintiffs successfully brought a meritorious civil rights claim to prevent the enforcement of an unconstitutional government regulation in the public interest; this is the very

11

form of litigation Congress wished to encourage by enacting § 1988.  See Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir. 1986) ("[Section] 1988 is intended to encourage [civil rights plaintiffs] to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers.").  "Deterring meritorious lawsuits on constitutional issues because they offer a small likelihood of a significant money judgment presents as grave a danger to our legal system as frivolous litigation." Koopman v. Water District No. 1 of Johnson, County, Kansas, 41 F.3d 1417, 1421 (10th Cir. 1994).  Accordingly, we must reverse the district court.

## III.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.  For the reasons stated above, we reverse and remand this matter to the district court to determine reasonable attorney's fees.

REVERSED AND REMANDED